

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

NB:JMM
F. #2014R00119

*610 Federal Plaza*
*Central Islip, New York 11722*

October 16, 2015

By ECF

The Honorable Arthur D. Spatt
United States District Court
Eastern District of New York
610 Federal Plaza
Central Islip, New York 11722

       Re:   United States v. Aaron Wider et al.
            14-CR-221 (ADS)

Dear Judge Spatt:

      The government respectfully submits this motion in limine for the admission of statements made by defendants Aaron Wider and Joseph Mirando during the course of the bank fraud conspiracy charged in the above captioned indictment.  For the reasons set forth below, the statements are not hearsay and are admissible against all defendants at trial under Federal Rule of Evidence 801(d)(2)(E).  Accordingly, the government should be permitted to elicit these statements during the direct examination of a cooperating defendant during the government's case-in-chief.

I.     Statement of Facts

    A.  Background

      The indictment in this case charges the defendants with a bank fraud conspiracy committed through a series of real estate transactions.  Specifically, the defendants bought homes, created fraudulent sales records and appraisal reports for the purpose of inflating the apparent collateral value of the homes, and then obtained mortgages that were up to 80 percent more than the true value of those homes.  The defendants kept most of the excess loan proceeds.  Through his mortgage banking company, defendant Wider and the coconspirators re-sold the fraudulently-obtained mortgages on the secondary mortgage market, using some of the excess loan proceeds to make just enough payments to make it appear as if the mortgages were being paid off on time, and then defaulting once the mortgages were sold, causing millions in losses.

For his part, defendant Mirando charged $1,000 for each fraudulent appraisal report that he generated in support of the scheme. In some instances, Mirando forged reports that bore the names of other real estate appraisers who were competitors of Mirando. However, as the evidence will show at trial, checks issued in payment for appraisal services during the conspiracy were all deposited into Mirando's bank account, not those of his competitors who, in fact, did not know until after completion of the conspiracy that their names were being used to generate fraudulent reports.

At trial, the government anticipates that a cooperating defendant - an admitted member of the mortgage fraud conspiracy - will testify about certain conversations that the cooperator had with both defendants Wider and Mirando. As summarized below, the government submits these are coconspirator statements admissible against all defendants at trial pursuant to Federal Rule of Evidence 801(d)(2)(E).

B.  The Coconspirator Statements

Specifically, in or about May through June 2007, the cooperating witness (hereafter "CW") questioned the amount of the fee that Mirando was charging to prepare false real estate appraisal reports. CW had prior experience in the real estate business and understood that the going rate for appraisal reports for residential properties was approximately $300 per report. CW, who was then acting as a buyer for a property and applying for a loan through Wider that far exceeded the true market price, learned that Mirando was charging $1,000 for an appraisal report - more than three times what CW believed to be the going rate in the industry.

CW will testify that he telephoned Mirando and asked the reason for the extremely high appraisal fee. CW told Mirando that given the large number of appraisals that Wider referred to Mirando, Mirando should be giving CW a discount, not charging well above the normal fee. In response, Mirando admitted to CW, in sum and in substance, that his appraisals for Wider property deals could not in fact be supported by true data from sales of comparable homes in the area. Because an accurate appraisal would not support Wider's demand for inflated appraisal values, Mirando said he had struck a deal to get paid $1,000 per appraisal report - far in excess of the going rate charged by competitors. Mirando concluded the conversation by telling CW that if he didn't like the $1,000 fee, CW should take up the matter with Wider.

A short time later, CW did in fact speak to Wider about Mirando's exorbitant fees. In response, Wider told CW that Mirando generated appraisals that supported the inflated loan applications. Wider then told CW to disregard Mirando's high fees since Mirando was in fact enabling them to get mortgages far above the true market value of the homes being purchased.

II.     Coconspirator Statements under Rule 801(d)(2)(E)

Under Federal Rule of Evidence 801(d)(2)(E), statements of a coconspirator are admissible as a statement against a party opponent when "the statement is offered against an opposing party and was made by the party's coconspirator during and in furtherance of the conspiracy." Coconspirator statements are admissible against a defendant if the trial court finds "that the defendant was a member of the conspiracy and that the statements were in furtherance of the conspiracy." United States v. DeJesus, 806 F.2d 31, 34 (2d Cir. 1986). Proof that an individual is a coconspirator is satisfied "by a fair preponderance of the evidence that the defendant was in fact a member of the conspiracy" and the proof "need not be overwhelming," United States v. Cicale, 691 F.2d 95, 103 (2d Cir. 1982) (internal quotation marks omitted). Rather, the Second Circuit has observed that "all that is required to meet the . . . threshold is a showing of a likelihood of an illicit association between the declarant and the defendant." Id. (internal quotation marks omitted). In addition, the Second Circuit has held that Rule 801(d)(2)(E) requires only that the declarant and the non-offering party were members of the conspiracy, not that the person to whom the statement was made was also a member. United States v. Sanin, 113 F.3d 1230, 1997 WL 280083, at *3 (2d Cir. May 23, 1997) (unpublished opinion).

With regard to the requirement that the out-of-court statement be "in furtherance of the conspiracy," it is not satisfied by "mere narrative," United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181, 1199 (3d Cir. 1989), or "idle chatter," United States v. Paone, 782 F.2d 386, 390 (2d Cir. 1986). Rather, the statement should "prompt the listener . . . to respond in a way that promotes or facilitates the carrying out of criminal activity." United States v. Maldonado-Rivera, 922 F.2d 934, 958 (2d Cir. 1990). In other words, the statement should "provide reassurance, or seek to induce a coconspirator's assistance, or serve to foster trust and cohesiveness, or inform each other as to the progress or status of the conspiracy." Id. at 958-59 (citing United States v. Rahme, 813 F.2d 31, 36-37 (2d. Cir. 1987)); United States v. Ammar, 714 F.2d 238, 252 (3d Cir. 1983)); see also United States v. Rivera, 22 F.3d 430, 435-36 (2d Cir. 1994). However, the Second Circuit has held that the statement need not actually further the conspiracy, but instead need only be made with the intent to further some objective of the conspiracy. United States v. Stewart, 433 F.3d 273, 293 (2d Cir. 2006).

Significantly, the Second Circuit has held that a status update is sufficient to satisfy the "in furtherance" requirement of Rule 801(d)(2)(E). United States v. Amato, 15 F.3d 230, 234 (2d Cir. 1994); United States v. Mulder, 273 F.3d 91, 103 (2d Cir. 2001); see also United States v. Schlesinger, 372 F. Supp. 711, 720 (E.D.N.Y. 2005). In Mulder, the district court admitted a coconspirator's statements even though they appeared to be merely narration of conversations between members of the conspiracy. Mulder, 273 F.3d at 103. The Second Circuit found that this narration furthered the conspiracy by keeping fellow coconspirators apprised of the arrangements for their extortion scheme. Id.

3

Here, in addition to the anticipated testimony summarized above, additional evidence will also support the finding that Wider and Mirando were members of the conspiracy. For Wider, the evidence consists of witness testimony regarding Wider's preparation of false loan applications, a consensual recording in which Wider admitted to being able to manipulate market prices in certain neighborhoods on Long Island, as well as documentary evidence signed by or attributable to Wider that contains numerous false statements, including real estate sales contracts, mortgage applications, and closing settlement statements known as HUD-1 forms. As for Mirando, in addition to his aforementioned admission that he produced inflated appraisals to support the scheme, the reports generated by Mirando all falsely stated the sale prices for the property for which the conspirators were fraudulently seeking to borrow money to buy. A second witness, whose personal and company names were used to generate fraudulent appraisals, will testify that he confronted Mirando about the forgeries. Mirando admitted that he forged appraisal reports using the witnesses' name and company information, and then asked the witness not to reveal Mirando's admission of guilty to others. In a subsequent phone conference with Wider, Wider specifically asked the witness to go along with the forgeries and falsely admit that he had generated the appraisal reports. The witness refused to do so.

Given the overwhelming number of specific admissions by Wider and Mirando that they were conspiring to defraud banks, Mirando's statement to CW that he was paid $1,000 per appraisal to generate fraudulent reports that could be used by Wider certainly constituted a statement intended to prompt CW "to respond in a way that promotes or facilitates the carrying out of criminal activity." Maldonado-Rivera, 922 F.2d at 958. Mirando's statement to CW had no other purpose than to facilitate the conspiracy by "providing reassurance" and "to foster trust and cohesiveness, or inform each other as to the progress or status of the conspiracy." Id.

Wider's statement to CW confirming that Mirando was paid exorbitant appraisal fees because his reports supported the fraudulent loan applications, and that CW should not further question the fees, was designed to inform CW as to the status of the conspiracy, Mirando's role in it, and the need to trust Mirando despite the excessive fees Mirando was demanding because Mirando was facilitating the fraudulent goals of the conspiracy. Such statements are not "idle chatter." They facilitated the conspiracy as that principle has been defined in the cases cited above, and therefore should be admissible as co-conspirator statements under Rule 801(d)(2)(E).

For the reasons set forth above, the government respectfully requests that it be permitted to elicit Mirando and Wider's statements to CW on direct examination.

Respectfully submitted,

KELLY T. CURRIE
ACTING UNITED STATES ATTORNEY

By: /s/ James Miskiewicz
James Miskiewicz
John (Artie) McConnell
Assistant U.S. Attorneys
(631) 715-7841/7825

cc: All Counsel (by ECF)
    Clerk of Court (ADS) (by ECF)