# Richard A. Miller & Associates

**356 Veterans Memorial Highway, Suite 3**
**Commack, New York 11725**
Telephone (631) 543-3030      Facsimile (631) 543-2888
Email: RAMillerEsq@aol.com

**Richard A. Miller, Esq.**                                    **Of Counsel:**

                                                              Albert Adam Breud, Esq.
                                                              Terrence P. Buckley, Esq.
                                                              Jonathan E. Kirchner, Esq.

February 12, 2016

Hon. Arthur D. Spatt
Senior Judge
U.S. District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

            **Re:    United States v. Aaron Wider**
                     **Criminal No.: 14-221 (ADS)**

Dear Judge Spatt:

        Please permit this letter to be Defendant Wider's reply to the Government's opposition to Wider's post-verdict motion.

        The government appears to concede it was required to prove beyond a reasonable doubt that the Defendant placed the banks at risk of loss and that the banks did not knowingly accept such risk (the risk associated with investing in real estate). The Government's response did not address Defendant's argument that the banks (the "victims") in this case were not "objectively reasonable," therefore mandating an acquittal. A victim is not an "objectively reasonable victim" where the alleged fraudulent misrepresentations could be easily confirmed from readily available external sources. See United States v. Boyd, 2 Fed. Appx. 86 (2d Cir. 2001), citing United States v. Brown, 79 F.3d 1550, 1559 (11th Cir. 1996).

        In this case, the Government, on its direct case, called witnesses that clearly demonstrated that any alleged misrepresentation made by the Defendants in this matter was readily discernable from external sources. For example, the Government called Eric Wind from GeoData, who testified that banks and lenders subscribed to his company's service "to find out information about a property, who owns it, details of the building, the lot informant, what it sold for, and most importantly, in order to find sales comparables, which is used in order to be able to determine the value of the property." Transcript at 574.

Patricia Lantz, during her "reinvestigation" into the loans, did a simple search of MLS to determine that the Mirando appraisals, in her words, "were not correct." Transcript at 835.

Likewise, the government's expert witness, Mr. Kevin Matheson testified that he used MLS and GeoData to determine what he thought were proper comparables. Transcript 1043-1044.

Simply put, the Government's witnesses clearly demonstrated that the "victims" of the alleged conspiracy were not objectively reasonable in that any information submitted by the Defendants was readily discernable from external sources. It is also clear that the "victims" were simply taking investment risks in real estate, as were many people and companies prior to the real estate bubble bursting. Worse yet, Nomura, one of the "victims" in this case, not only stated that it examined the loans for purchase prior to purchasing them, but they were also found to have pawned "toxic" real estate investments off to the Federal Government itself. Transcript at 749.

With respect to the issue of Joseph Mirando's guilty plea and subsequent testimony against Wider, the Court should grant Wider's motion. The Government concedes that there are no Second Circuit decisions on point. Furthermore, Mr. LaRusso's (counsel for Mirando) affidavit leaves out a critical fact: that Mirando had a proffer meeting with the Government on September 23, 2015. At the time, the trial was scheduled for the first week of November 2015. In other words, a mere five weeks prior to the original trial date, Mirando was looking for a plea deal from the Government. Furthermore, Mirando's testimony was crucial in that no other witness testified to the fact that Wider directed Mirando as to what the values of the appraisals done should be. Mirando's testimony was not cumulative, it dealt with an issue that no other witnesses or evidence spoke to. Therefore, there was extreme prejudice to Wider when Mirando was permitted to select the jury with Wider, and thereafter testify against him in front of the same jury.

Based upon the above, Defendant Wider respectfully requests that the Court grant Wider's Rule 29 motion be granted in its entirety.

Sincerely,

Richard C. Miller

Richard A. Miller
Jonathan Edward Kirchner